IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STEPAN BRUGER and DMYTRO BRUGER, | ) ) ) |
| Plaintiffs, | ) ) |
| | ) Case No. 19 CV 2277 |
| v. | ) |
| | ) Judge Joan H. Lefkow |
| OLERO, INC., EMB GROUP, INC., OLEG ROMANYUK, and EUGENE MINOCHKIN, | ) ) ) ) |
| Defendants. | ) ) |

## **OPINION AND ORDER**

Plaintiffs Stepan Bruger and Dmytro Bruger bring several claims alleging defendants underpaid them and a similarly situated class for their work as truck drivers. Defendants move to dismiss the complaint for failure to state a claim. The motion is granted in part and denied in part.[1]

---

[1] All named plaintiffs and all defendants are citizens of Illinois and plaintiffs assert no federal claims, but they invoke this court's jurisdiction under 28 U.S.C. § 1332(d). (*See* dkt. 13 ¶¶ 6-12.) That section grants federal courts jurisdiction over class actions in which at least one class member satisfies the minimum diversity requirement and the amount in controversy is greater than $5,000,000. This court previously requested briefing on whether the amount-in-controversy requirement was met and concluded it was because plaintiffs' allegations made it possible the stakes could exceed $5,000,000. *See Blomberg v. Serv. Corp. Int'l*, 639 F.3d 761, 764 (7th Cir. 2011) ("Once the proponent of federal jurisdiction has explained plausibly how the stakes exceed $5,000,000, the case belongs in federal court unless it is legally impossible for the plaintiff to recover that much") (citations omitted). The court also concluded that the local controversy exceptions to jurisdiction did not apply because the evidence suggested 89% of putative class members are citizens of states other than Illinois. *See* 28 U.S.C. § 1332(d)(3) & (4); (dkt. 27 at 11).

Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred here. (Dkt. 13 ¶ 16.)

# BACKGROUND[2]

The Brugers, who are brothers, worked as truck drivers for defendants Olero, Inc., and EMB Group, Inc., which are trucking companies owned by defendants Oleg Romanyuk and Eugene Minochkin. (Dkt. 13 ¶ 1.) The Brugers allege that defendants underpaid them and misclassified them as independent contractors rather than employees. (*Id.*)

Stepan Bruger learned about an opening at the defendant companies in October 2016 from reading the "Chas I Podii" Ukrainian-language newspaper distributed in Chicago. (*Id.* ¶ 35.) He called the number listed in the paper and was invited for an interview. (*Id.*) The interview took place at Olero's offices in Chicago and involved Romanyuk and the safety manager for Olero and EMB. (*Id.* ¶¶ 36, 174.) Romanyuk told Stepan that he would be driving a truck provided by the company, that the job would require a full-time commitment, and that he could not work for any other trucking company.[3] (*Id.* ¶¶ 37-38.) Romanyuk also told him that he would be paid $0.50 for each mile driven, including for "empty miles." (*Id.* ¶ 38.) Stepan accepted the offer. (*Id.* ¶ 39.) He "was given some papers to sign" but could not understand most of them due to his limited English language skills. (*Id.* ¶ 40.)

Dmytro Bruger learned about employment with defendants through his brother. (*Id.* ¶ 57.) He similarly was interviewed at Olero's offices, by Romanyuk and Minochkin. (*Id.* ¶ 58.) Romanyuk told Dmytro that he would be driving a truck provided by the company, that the job would require a full-time commitment, that he could not work for any other trucking company,

---

[2] This statement of facts is taken from the well-pleaded allegations in plaintiffs' amended complaint, (dkt. 13), which are presumed true for purposes of this motion. *See Active Disposal, Inc.* v. *City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011); *Apex Digital, Inc.* v. *Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009).

[3] The court refers to plaintiffs by their first names where necessary to distinguish them from each other.

and that he would be paid $0.50 per mile, including empty miles. (*Id.* ¶¶ 60-63.) Dmytro accepted the offer, at which point Minochkin presented him with a stack of documents to sign. (*Id.* ¶ 61.) Dmytro signed them despite not being able to understand them due to his limited English skills. (*Id.*) Dmytro states that he "had no reason to believe that the papers would have different terms than what . . . Romanyuk and Minochkin promised him." (*Id.* ¶ 62.)

Both named plaintiffs make similar allegations about how their relationship with the defendants unfolded in reality. They allege that, while all drivers were required to complete log books showing the distance they drove, Romanyuk and Minochkin would regularly alter those books to lower drivers' miles and their corresponding compensation. (*Id.* ¶¶ 44-49, 66.) Defendants also reduced the Brugers' compensation based on "charges" they had not disclosed when the Brugers took their jobs. (*Id.* ¶¶ 51, 69.) Charges were assessed for things like completing the log books, washing trucks, repairing the trucks, and violations assessed by the Department of Transportation. (*Id.* ¶¶ 51, 69.)

Stepan Bruger alleges he was underpaid for at least 10% of the actual miles he drove for defendants, amounting to at least $7,150 over the eleven months of his employment. (*Id.* ¶ 49.) He also alleges defendants imposed unwarranted charges of $7,538.83, yielding total underpayment of at least $16,188.83. (*Id.* ¶¶ 52, 53.)

Dmytro Bruger alleges he was underpaid $5,150 based on defendants' false reduction of his mileage driven and assessed $7,870.00 in unwarranted charges, yielding total underpayment of at least $15,220.00. (*Id.* ¶¶ 67-71.) Dmytro worked for defendants for nine months. (*Id.* ¶ 74.)

The Brugers allege defendants also failed to fully compensate a class of similarly-situated truck drivers, defined as "[a]ll persons who have worked for Defendant companies as truck drivers and truck driver trainees in Illinois or otherwise have driven Defendant companies', their

predecessors', successors', subsidiaries' and/or affiliated companies' trucks at any time during the relevant statutory period, and who personally provided freight cargo transportation services pursuant to independent contract agreements entered into individually or on behalf of other entities to Defendant companies and who have not been classified as employees of Defendant companies." (*Id.* ¶ 121.)

The Brugers allege defendants failed to pay putative class members for approximately 10% of the actual miles they drove and made illicit deductions from wages earned similar to those they say they experienced. (*Id.* ¶¶ 75-79.) The Brugers also allege that defendants charged some truckers "deposits" or "escrow" under which they retained at least $1,500 from the truckers' initial compensation but either never repaid the deposits or repaid them after "great delay." (*Id.* ¶ 81.) The Brugers further allege defendants conspired to misclassify truckers as independent contractors by "avoiding the application of payroll tax withholding and remittance under the US Tax Code," creating fictitious equipment leases between the truckers and the companies, and mandating independent contractor agreements that defendants required drivers to sign in the capacity of corporate entities owned by the drivers. (*Id.* ¶¶ 90–91.) The putative class members at all times performed their work by driving trucks owned by one of the defendant companies. (*Id.* ¶ 93.)

The Brugers originally filed this lawsuit in the Circuit Court of Cook County. (*Id.* ¶ 26.) Defendants removed the action to this court in April 2019. (*Id.* ¶ 34.) Plaintiffs filed an amended complaint bringing claims under the Illinois Wage Payment Collection Act ("IWPCA") and various Illinois common law theories generally seeking unpaid compensation. (Dkt. 13.) Defendants now move to dismiss plaintiffs' complaint in its entirety for failure to state a claim. (Dkt. 14.) Defendants attach to their motion "Independent Contractor Agreements" that both

4

Brugers signed, which defendants argue govern the entirety of the parties' relationship and bar the Brugers' claims. (Dkts. 15-1 & 15-2.)

## ANALYSIS

### I. Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges a complaint for failure to state a claim on which relief may be granted. In ruling on a Rule 12(b)(6) motion, the court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Active Disposal, Inc.* v. *City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also establish that the requested relief is plausible on its face. *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009); *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007). The allegations in the complaint must be "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955. At the same time, the plaintiff need not plead legal theories; it is the facts that count. *Hatmaker* v. *Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010).

### II. Documents To Be Considered on the Motion

As an initial matter, plaintiffs argue that the court should not consider the independent contractor agreements they signed in deciding defendants' motion to dismiss. (Dkt. 19 at 3.) Generally speaking, a court deciding a Rule 12(b)(6) motion may consider only the well-pleaded allegations in the plaintiff's complaint. *Rosenblum* v. *Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002). An exception exists, however, for documents that are "referred to in the plaintiff's complaint and are central to his claim." *Id.* Plaintiffs acknowledge making reference to the independent contractor agreements in their complaint but argue the agreements are not central to their claims because they "brought their claims pursuant to the employment

5

relationship in fact and the oral representations Defendants made to Plaintiffs." (Dkt. 19 at 3.) That argument fails because the question of centrality is not up to the plaintiffs alone. In *Rosenblum*, the Seventh Circuit held that a defendant was entitled to append an employment agreement to its motion to dismiss where it argued an arbitration clause in that agreement preempted plaintiff's claims. 299 F.3d at 661. Similarly here, defendants argue plaintiffs' claims are defeated by the integration clause of the independent contractor agreements. The court thus must consider those agreements.[4]

### III.   IWPCA Claim (Count I)

The purpose of the IWPCA is "to provide employees with a cause of action for the timely and complete payment of earned wages or final compensation, without retaliation from employers." *Costello* v. *BeavEx, Inc.*, 810 F.3d 1045, 1050 (7th Cir. 2016) (quoting *Byung Moo Soh* v. *Target Mktg. Sys., Inc.,* 817 N.E.2d 1105, 1107, 353 Ill. App. 3d 126 (2004)). Accordingly, the IWPCA imposes a variety of wage-related obligations on employers, such as paying employees within certain time periods and prohibiting deductions from wages without express written consent given at the time of the deduction. *See* 820 Ill. Comp. Stat. 115/3, 4, & 9; *Costello*, 810 F.3d at 1048; *Lupian* v. *Joseph Cory Holdings LLC*, 905 F.3d 127, 133 (3d Cir. 2018).

An IWPCA claim must be based on a valid contract or employment agreement. *Hess* v. *Kanoski & Assocs.*, 668 F.3d 446, 452 (7th Cir. 2012). Illinois courts have explained that the

---

[4] This court recently held that a purported independent contractor agreement could not be considered on a motion to dismiss where a plaintiff alleged it entered into an oral employment agreement in August 2014, and the independent contractor agreement was not signed until May 2015. *Tsybikov* v. *Dovgal*, No. 19 C 3334, 2019 WL 5208869, at *2 (N.D. Ill. Oct. 16, 2019). In the present case, in contrast, plaintiffs do not dispute that they signed the independent contractor agreements at the same time as the purported oral employment agreement was entered into. (*See* dkt. 13 ¶¶ 40, 61; dkt. 19 at 3.)

concept of an employment agreement under the IWPCA is "broader than a contract" and "requires only a manifestation of mutual assent." *Id.* (quoting *Zabinsky* v. *Gelber Grp., Inc.*, 807 N.E.2d 666, 671, 347 Ill. App. 3d 243 (2004)). This is so because "to require an employee to have a valid, enforceable contract before invoking the Act would render the Act surplusage." *Zabinsky*, 807 N.E.2d at 671. In addition, "employers and employees can manifest their assent to conditions of employment by conduct alone." *Landers-Scelfo* v. *Corp. Office Sys., Inc.*, 827 N.E.2d 1051, 1059, 356 Ill. App. 3d 1060, 1068 (2005).

The IWPCA carves out an exemption from relationships it otherwise would cover where purported employees meet three criteria indicative of being independent contractors—a version of what is commonly referred to as an "ABC test" in employment law. *Costello*, 810 F.3d at 1050. Specifically, the Act provides that the term "employee" does not encompass any individual:

> (1) who has been and will continue to be free from control and direction over the performance of his work, both under his contract of service with his employer and in fact; and
> (2) who performs work which is either outside the usual course of business or is performed outside all of the places of business of the employer unless the employer is in the business of contracting with third parties for the placement of employees; and
> (3) who is in an independently established trade, occupation, profession or business.

820 Ill. Comp. Stat. 115/2. All three criteria must be met for the exemption to apply.[5] *Landers-Scelfo*, 827 N.E.2d at 1058 n. 1.

---

[5] The ABC test is generally broader than the common-law test for employment, as it creates "a near-presumption that a worker is an employee rather than an independent contractor." *In re FedEx Ground Package Sys., Inc. Employment Practices Litig.*, 273 F.R.D. 516, 521 (N.D. Ind. 2010); *see also Landers-Scelfo*, 827 N.E.2d at 1061 (the IWPCA "definition of 'employer' is inconsistent with the common-law definition and shows an intent to reach those who do not control the manner in which work is done").

Plaintiffs' suit asserts a litany of IWPCA violations, including failing to pay wages in a timely manner under sections 115/3 & 4, failing to pay final compensation in a full and timely manner under section 115/5, making unauthorized deductions under section 115/9, and failing to notify plaintiffs of their true rate of pay under section 115/10. (Dkt. 13 at 32-33.) Defendants move to dismiss these claims on the ground that plaintiffs, in their individual capacities, lack standing to sue defendants for IWPCA violations because their relationships are governed by the independent contractor agreements they entered into on behalf of the corporate entities they own.[6] (Dkt. 15 at 9.)

The Illinois Appellate Court addressed the question whether an independent contractor agreement is determinative of a party's employment status under the Illinois Unemployment Insurance Act in *C.R. England, Inc.* v. *Illinois Dep't of Employment Security*, 7 N.E.3d 864, 881, 2014 IL App (1st) 122809. That Act applies to a similar scope of employment relationships as the IWPCA and contains a "very similarly worded" ABC exemption for independent contractors.[7] *See id.* at 874; *Byung Moo Soh*, 817 N.E.2d at 1109; 820 Ill. Comp. Stat. 405/212.

The appeal in *C.R. England* arose from a decision of the Illinois Department of Employment Security finding that a driver was an employee of the C.R. England carrier company despite the fact that the driver had signed an independent contractor agreement requiring him to own or lease his own truck. 7 N.E.3d at 869. In deciding whether the independent contractor exemption applied, the court first observed that the "statutory elements

---

[6] Defendants' argument also could be construed as challenging plaintiffs' right to sue as the real parties in interest, but the characterization does not matter for purposes of this motion.

[7] The Unemployment Insurance Act applies to "any service performed by an individual for an employing unit, defined as an entity "which has or had in its employ one or more individuals performing services for it within this State." *C.R. England*, 7 N.E.3d at 871; 820 Ill. Comp. Stat. 405/204 & 206.

8

dictate whether the exemption operates, and the designation or description which the parties apply to their relationship is not controlling." *C.R. England,* 7 N.E.3d at 875 (quotation omitted). The court thus held that even though the parties had entered into a contract that "purport[ed] to be an independent contractor agreement, that designation does not control." *Id.*

The Department of Employment Security had held that C.R. England failed to carry its burden of showing the second prong of the independent contractor exemption applied by proving the claimant's services were outside C.R. England's "usual course of business" or were performed "outside [its] places of business." *Id.* The Appellate Court affirmed, finding that C.R. England was in the freight-hauling business and thus drivers like the claimant operated in its usual course of business. *Id.* at 876. The court also found that, given the nature of C.R. England's work, its "place of business" extended to public roadways and pick-up and drop-off points.[8] *Id.* at 876-77.

Similarly, in *Spates* v. *Roadrunner Transportation Sys., Inc.*, No. 15 C 8723, 2016 WL 7426134, at *1 (N.D. Ill. Dec. 23, 2016), this court certified a class of truck drivers who alleged they were improperly classified as independent contractors and subjected to illegal wage deductions under the IWPCA. The plaintiffs all owned or leased their own trucks and signed agreements classifying them as independent contractors. *Id.* The defendants did not contend that such agreements barred plaintiffs' IWPCA claim as a categorical matter but argued that the question whether all plaintiffs were in fact employees lacked sufficient legal or factual

---

[8] The Unemployment Insurance Act applies to a narrower set of employment relationships than the IWPCA in that the former contains an express exemption for certain owner-operators of trucks in addition to the ABC independent-contractor exemption. 820 Ill. Comp. Stat. 405/212.1. The court in *C.R. England* held the owner-operator exemption did not apply because C.R. England did not establish that the claimant "offered his services to the public" as required by the act. 7 N.E.3d at 881. The owner-operator exemption is not, of course, at issue in this case.

9

commonality to be amenable to class-wide treatment. *Id.* at *3. The court rejected that contention, finding the drivers were similarly-situated in the respects relevant to the ABC test. *Id.*

The Illinois Appellate Court also has held that an independent contractor agreement is not determinative of a truck driver's employment status for purposes of the Illinois Workers' Compensation Act and the common-law test for *respondeat superior* liability. *Labuz* v. *Illinois Workers' Comp. Comm'n*, 981 N.E.2d 14, 22, 2012 IL App (1st) 113007WC (stating that the fact the parties had entered into an independent contractor agreement was a "factor of minor significance" in determining the nature of their relationship); *Sperl* v. *C.H. Robinson Worldwide, Inc.*, 946 N.E.2d 463, 408 Ill. App. 3d 1051 (2011). This court recently relied on workers' compensation decisions in deciding an IWPCA claim in *Patel* v. *7-Eleven, Inc.*, No. 18 C 07010, 2019 WL 3554438 (N.D. Ill. Aug. 5, 2019) (citing *Ware* v. *Indus. Comm'n*, 743 N.E.2d 579, 585-86, 318 Ill. App. 3d 1117 (2000)). The court there dismissed an IWPCA claim brought by the owner of a 7-Eleven franchise who had signed a franchise agreement as sole owner of a corporation, but did so without prejudice to repleading if the plaintiff could allege the franchisee corporation was a "sham." *Id.* at *4. The court stated it was "not aware of any law creating a hard-and-fast rule that prohibits a franchisee corporation's sole owner from qualifying as an employee of the franchisor under the IWPCA." *Id.*

In addition, the Seventh Circuit looked to workers' compensation decisions in construing Kansas's Wage Payment Act, an analog of the IWCPA, in *Craig* v. *FedEx Ground Package Sys., Inc.*, 686 F.3d 423, 426 (7th Cir. 2012). The court there certified to the Kansas Supreme Court the question whether FedEx drivers were employees under the act, noting the case centered on a "form Operating Agreement FedEx entered with each of the class members." *Id.* at 425. FedEx

acknowledged the agreement was "carefully structured. . . [to] label the drivers as independent contractors." *Craig* v. *FedEx Ground Package Sys., Inc.*, 300 Kan. 788, 791 (2014). The Kansas Supreme Court ultimately answered the question by holding that the drivers were employees. *Id.* at 791.

The present case is different from those described above in that the plaintiffs here signed their independent contractor agreements in their capacities as sole owners of corporate entities. (*See* dkts. 15-1, 15-2.) Defendants argue that this distinction should be dispositive because it is the corporate entities that would have any claim to unpaid compensation under the agreements. (Dkt. 15 at 4.)

But the Illinois Appellate Court has reasoned that the fact that a truck driver had incorporated did not "significantly alter the analysis" as to whether the driver was an employee under the Workers' Compensation Act, where he had no customers of his own and worked exclusively for a single carrier company (like the plaintiffs here). *Ware*, 743 N.E.2d at 585-86; (dkt. 13 ¶ 106). Similarly, in *Johnson* v. *Diakon Logistics*, No. 16-CV-06776, 2018 WL 1519157, at *9 (N.D. Ill. Mar. 28, 2018), this court held that a trucker stated an IWPCA claim even though he had signed an independent contractor agreement in his capacity as the sole owner/officer of a corporation. The court reasoned that despite the existence of this agreement it could reasonably infer from the trucker's allegations that the parties agreed to form an employment relationship with the "option of having . . . payments going through the company that [plaintiff] owned."[9] *Id.*

---

[9] Defendants argue *Diakon Logistics* is distinguishable because here the independent contractor agreements contain an integration clause, whereas there is no mention of an integration clause in the *Diakon Logistics* opinion. (Dkt. 20 at 10.) But the court is unpersuaded that an integration clause is dispositive in light of the Illinois Appellate Court decisions discussed above holding that the existence of an independent contractor agreement is only a minor factor in determining the nature of a purported employment relationship, and plaintiffs' allegations that the contract was not followed in significant

11

The facts as alleged by plaintiffs here present stronger claims than those in *Ware* or *Diakon Logistics* because plaintiffs allege the independent contractor agreements they signed were divorced from the reality of the parties' relationships in significant ways. Most notably, where the agreements contemplate that plaintiffs' companies own trucks they would lease to defendants, plaintiffs allege that they drove a company truck (which they did not lease from the company) at all times.[10] (Dkt. 13 ¶¶ 42, 65.) The distinction between owner-operators and company drivers is a highly significant one in the trucking industry.[11] *See Mazzei* v. *Rock N Around Trucking, Inc.*, 246 F.3d 956, 964 (7th Cir. 2001) (fact that drivers owned their own trucks and were responsible for all maintenance, storage and fuel costs was a "strong indication that the drivers were independent contractors" under common-law test) (citing *E.E.O.C.* v. *N.*

---

ways. *See Manahan* v. *Daily News Tribune*, 365 N.E.2d 1045, 1051, 50 Ill. App. 3d 9 (1977) ("If the parties to the relation are bound by a contract which by its terms clearly defines that relationship as that of employer/independent contractor, *and the parties abide by that contract*, then the contract may be conclusive of their relationship") (emphasis added). Defendants cite broad statements from courts in this circuit regarding the importance of giving effect to signed contracts, but those cases did not involve the interpretation of employment statutes which were enacted to protect workers from exploitation. (Dkt. 20 at 10 (citing *Eclipse Gaming Sys., LLC* v. *Antonucci*, 2018 WL 2463379, at *5 (N.D. Ill. 2018); *Aircraft Owners & Pilots Ass'n* v. *Hinson*, 102 F.3d 1421, 1426, n.2 (7th Cir. 1996)).) Furthermore, defendants do not argue that the alleged underpayments at the heart of plaintiffs' suit—based on reductions in drivers' reported miles and various unwarranted charges—were actually in accordance with the independent contractor agreements.

[10] Leases of equipment by owner-operators to authorized carriers are governed by detailed regulations promulgated by the Secretary of Transportation in order to "clarify the responsibilities of authorized carriers and drivers, and thereby prevent carriers from using informal leases with owner-operators to circumvent safety regulations and responsibility for injuries to third-parties." *Diakon Logistics*, 2018 WL 1519157, at *5 (citing *Shimko* v. *Jeff Wagner Trucking, LLC*, No. 11-CV-831-WMC, 2013 WL 10075919, at *2 (W.D. Wis. June 28, 2013)).

[11] Last month, the United States District Court for the Southern District of California granted a temporary restraining order enjoining enforcement of California's recently-enacted "ABC" test (Assembly Bill 5) as to any motor carrier operating in California. *California Trucking Ass'n* v. *Becerra*, No. 3:18-CV-02458, 2019 WL 7372056, at *2 (S.D. Cal. Dec. 31, 2019). The court found that plaintiffs had shown a reasonable likelihood of success on their claim that the law was preempted by the Federal Aviation Administration Authorization Act because it "would effectively mandate[] that motor carriers treat owner-operators as employees." *Id.*

*Knox Sch. Corp.*, 154 F.3d 744, 749 (7th Cir. 1998)); *Esquinca* v. *Illinois Workers' Comp. Comm'n*, 51 N.E.3d 5, 21, 2016 IL App (1st) 150706WC, ¶ 67 (affirming decision of the Workers' Compensation Commission finding a trucker to be an independent contractor where he had incorporated and was an owner-operator).

Defendants make no argument that, absent the existence of the independent contractor agreement, they would not have an employment relationship with the plaintiffs. (*See* dkt. 15 at 4–5.) Plaintiffs allege the existence of an employment agreement, the heart of which was defendants' promise to pay them $0.50 per mile, without any fees, charges, or other deductions. (Dkt. 13 ¶¶ 38, 175, 178.) Plaintiffs further allege that defendants controlled their work in significant ways. They allege defendants required them to work on a full-time basis, and prohibited them from working for other companies. (*Id.* ¶¶ 60, 97.) They also allege that defendants provided them all their work assignments, set the prices charged for all deliveries, billed customers for work performed, and collected receivables. (*Id.* ¶ 102.) Plaintiffs further allege defendants specified what routes to take and required strict compliance with defendants' policies, which were enforced by fines. (*Id.* ¶ 104.) All of plaintiffs' work was done within defendants' usual course of business, which was to deliver freight. (*Id.* ¶ 107.) These allegations are sufficient to plead the existence of an employment relationship at the motion-to-dismiss stage.

## IV.     FAAAA Preemption

Defendants argue that the Federal Aviation Administration Authorization Act of 1994 (the "FAAAA") preempts plaintiffs' unjust enrichment, fraud, and conspiracy claims. (Dkt. 15 at 13.) That act was passed with the goal of deregulating the trucking industry, and accordingly provides that a state "may not enact or enforce a law, regulation, or other provision . . . related to

a price, route, or service of a motor carrier . . . with respect to the transportation of property." *Costello*, 810 F.3d at 1051; 49 U.S.C. § 14501(c). The Seventh Circuit has held that there are two requirements for FAAAA preemption to apply: "(1) a state must have enacted or attempted to enforce a law, and (2) that law must relate to carrier rates, routes, or services either by expressly referring to them, or by having a significant economic effect on them." *Nationwide Freight Sys., Inc.* v. *Illinois Commerce Comm'n*, 784 F.3d 367, 374 (7th Cir. 2015) (quotation omitted). In contrast, "a state's regulatory action is not preempted where its relationship with carrier rates routes or services is 'tenuous, remote, or peripheral.'" *Id.* (quoting *Dan's City Used Cars, Inc.* v. *Pelkey*, 569 U.S. 251, 261, 133 S. Ct. 1769, 1778 (2013)). In this regard, the Seventh Circuit has instructed that "the effect of a labor law, which regulates the motor carrier *as an employer*, is often too 'remote' to warrant FAAAA preemption." *Costello*, 810 F.3d at 1054 (emphasis original); *see also California Trucking Ass'n* v. *Su*, 903 F.3d 953, 961 (9th Cir. 2018) ("Congress did not intend to hinder States from imposing normative policies on motor carriers as employers"); *cf. Schwann* v. *FedEx Ground Package Sys., Inc.*, 813 F.3d 429, 437–40 (1st Cir. 2016) (holding FAAAA preempted Massachusetts' ABC test for determining the existence of employment relationships).

In *Costello*, the Seventh Circuit held that the FAAAA did not preempt the definition of employee contained in the IWPCA, and thus that a class action alleging improper deductions under the IWPCA could proceed. 810 F.3d at 315; *accord Lupian*, 905 F.3d at 129. Defendants make no argument as to why common law claims seeking allegedly due and unpaid wages would be preempted where IWPCA claims seeking the same thing are not. To the contrary, in *Diakon Logistics* this court held that the FAAAA did not preempt either IWPCA or unjust enrichment claims brought by drivers against a carrier. 2018 WL 1519157, at *4. The court agrees with

14

*Diakon Logistics*'s holding that such IWPCA and common law claims are indistinguishable for purposes of FAAAA preemption, and thus holds the preemption doctrine is inapplicable here.

V.      **Fraud (Counts II-IV)**

Plaintiffs bring claims of fraud in the inducement, fraudulent misrepresentation, and fraudulent concealment. (Dkt. 13 at 33-46.) All of these claims are based on the same alleged representations and seek the same relief, so the court will address them together. *See Tsybikov* v. *Dovgal*, No. 19 C 3334, 2019 WL 5208869, at *3 (N.D. Ill. Oct. 16, 2019) (doing same). In substance, plaintiffs allege that defendants told them at the outset of their relationship that they would be paid $0.50 for each mile driven, including for "empty miles," and "without any fees or fines or charges deducted." (Dkt. 13 ¶¶ 38, 63, 178.)

Plaintiffs' allegations with respect to their fraud claims thus are essentially the same as the allegations underlying their IWPCA claim. In *Tsybikov*, this court granted a motion to dismiss a group of truck drivers' fraud claims on the grounds that under Illinois law a party may not recover in tort for a claim, like an IWPCA claim, that sounds in breach of contract. 2019 WL 5208869, at *3 (citing *Johnson* v. *George J. Ball, Inc.,* 248 Ill App. 3d 859, 868 (1993)); *see also Byung Moo Soh*, 817 N.E.2d at 1108 ("Claims for wages or final compensation are thus akin to breach of contract actions"). The same reasoning applies here. Plaintiffs' fraud claims are thus dismissed.

VI.     **Conspiracy To Violate the IWPCA (Count V)**

Defendants argue plaintiffs' civil conspiracy claim must be dismissed because such claims cannot be predicated on IWPCA violations. (Dkt. 15 at 14.) This court previously has held to the contrary. *Tsybikov*, 2019 WL 5208869, at *4. Defendants present no argument as to

why the court should depart from that holding here. Thus defendants' motion to dismiss plaintiffs' claim that they conspired to violate the IWPCA is denied.

## VII. Conspiracy To Commit Fraud (Count VI)

Because the court has dismissed the underlying fraud counts, plaintiffs' claim that defendants conspired to commit fraud is also dismissed.

## VIII. Declaratory Judgment (Count VII)

Defendants argue plaintiffs' declaratory judgment claim should be dismissed because their contractual relationship with defendants has ended and "[f]ormer contractors do not have standing to seek declaratory or injunctive relief against the company for which they previously worked." (Dkt. 15 at 16 (quoting *Ruffin* v. *Exel Direct, Inc.*, No. 09 C 1735, 2009 WL 3147589, at *3 (N.D. Ill. Sept. 29, 2009).) Plaintiffs do not contest this general proposition but argue that the putative class contains current employees who are "misclassified and underpaid." (Dkt. 19 at 7.)

"[M]isclassification by itself is not enough to state an IWPCA claim," *Schneider* v. *Ecolab, Inc.*, No. 14 C 01044, 2015 WL 1402615, at *6 (N.D. Ill. Mar. 25, 2015), and a claim for underpayment would not be ripe until wages due were actually not paid. Thus the court sees no basis to grant declaratory relief. Plaintiffs' declaratory judgment count is dismissed.

## IX. Accounting (Count VIII)

Illinois law precludes an accounting claim unless a plaintiff has no adequate remedy at law. *Tsybikov*, 2019 WL 5208869, at *4; *Ruffin* v. *Exel Direct, Inc.,* 2009 WL 3147589 (N.D. Ill. 2009). Here, plaintiffs have a potential remedy via their IWPCA claim. Thus, plaintiffs' accounting claim is dismissed.

## X. Unjust Enrichment (Count IX)

Defendants argue plaintiffs' unjust enrichment claim should be dismissed because their independent contractor agreements cover the subject in dispute. (Dkt. 15 at 12.) Illinois law holds that a plaintiff cannot recover under both breach-of-contract and unjust enrichment theories. *Prima Tek Il, LLC* v. *Klerk's Plastic Indus. B.U.*, 525 F.3d 533, 541 (7th Cir. 2008); *Enger* v. *Chicago Carriage Cab Corp.*, 812 F.3d 565, 570 (7th Cir. 2016). At the pleading stage, however, a plaintiff may bring breach-of-contract and unjust enrichment claims in the alternative. *Cohen* v. *Am. Sec. Ins. Co.*, 735 F.3d 601, 615 (7th Cir. 2013) ("A plaintiff may plead as follows: (1) there is an express contract, and the defendant is liable for breach of it; and (2) if there is *not* an express contract, then the defendant is liable for unjustly enriching himself at my expense"). Defendants' motion to dismiss plaintiffs' unjust enrichment count thus is denied.

## CONCLUSION

Defendants' motion to dismiss is granted in part and denied in part. Counts I (IWPCA), V (conspiracy to violate the IWPCA), and IX (unjust enrichment) may proceed. The remaining counts are dismissed.

Date: January 21, 2019

                                                  U.S. District Judge Joan H. Lefkow